**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-1599**

GABRIEL SANTOS ALVAREZ,

       Petitioner,

    v.

LORETTA E. LYNCH, Attorney General,

       Respondent.

On Petition for Review of an Order of the Board of Immigration
Appeals.

Argued: May 10, 2016          Decided: July 7, 2016

Before DIAZ, FLOYD, and THACKER, Circuit Judges.

Petition for review denied by published opinion. Judge Thacker
wrote the opinion, in which Judge Diaz and Judge Floyd joined.

**ARGUED**: Brian Ross Murray, Mark Alastair Stevens, MURRAY OSORIO
PLLC, Fairfax, Virginia, for Petitioner. Christina Peterson
Greer, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.,
for Respondent. **ON BRIEF**: Benjamin C. Mizer, Principal Deputy
Assistant Attorney General, Civil Division, Terri J. Scadron,
Assistant Director, Meadow W. Platt, Trial Attorney, Office of
Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE,
Washington, D.C., for Respondent.

THACKER, Circuit Judge:

Gabriel Santos Alvarez ("Petitioner") seeks review of a Board of Immigration Appeals ("BIA") decision finding him ineligible for cancellation of removal. The BIA reached this conclusion after determining that Petitioner's Virginia conviction for forging a public record pursuant to Virginia Code Ann. § 18.2-168 ("Virginia forgery") was an aggravated felony under the Immigration and Nationality Act ("INA"). See 8 U.S.C. § 1101(a)(43)(R) (defining aggravated felony as including "an offense relating to . . . forgery"). Petitioner challenges this determination, arguing that Virginia forgery does not "relat[e] to" the federal generic definition of forgery.

As explained below, we conclude that Virginia forgery is an aggravated felony under the INA because it is a categorical match with the federal generic definition of forgery; therefore, the state and federal forgery crimes necessarily "relat[e] to" one another. As a result, we deny the petition for review, and we deny as moot the Government's request to remand this case to the BIA.

I.

Petitioner is a citizen of Bolivia and has been a lawful permanent resident in the United States since October 6, 2002. On January 3, 2012, he was convicted of embezzlement under Virginia law and sentenced to three years in prison, all

2

suspended. Based on separate and distinct conduct, on January 31, 2014, Petitioner was convicted of forging a public record pursuant to Virginia Code Ann. § 18.2-168 and assigned another three-year sentence, with all but seven months suspended.

On August 4, 2014, the Department of Homeland Security ("DHS") issued Petitioner a Notice to Appear, charging that Petitioner was eligible for removal from the United States because he had been convicted of two crimes involving moral turpitude. See 8 U.S.C. § 1227(a)(2)(A)(ii).[1] At Petitioner's September 10, 2014 removal hearing, DHS filed an additional charge of removability under 8 U.S.C. § 1227(a)(2)(A)(iii), claiming Petitioner was an alien convicted of an aggravated felony -- specifically, an offense "relating to" forgery. Id. § 1101(a)(43)(R).

Petitioner filed an application for cancellation of removal, and DHS filed a motion to pretermit Petitioner's application, contending the aggravated felony conviction rendered Petitioner ineligible for this relief.[2] On October 23,

_____

[1] "Any alien who at any time after admission is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial, is deportable." 8 U.S.C. § 1227(a)(2)(A)(ii).

[2] "The Attorney General may cancel removal in the case of an alien who is inadmissible or deportable from the United (Continued)

3

2014, the immigration judge ("IJ") issued a written decision sustaining both charges of removability and granting DHS's motion to pretermit Petitioner's application. The IJ concluded that although Virginia forgery is "slightly broader" than generic federal forgery, it is nonetheless an "offense[] 'relating to'" forgery. A.R. 93-94 (quoting 8 U.S.C. § 1101(a)(43)(R)).[3] Petitioner appealed to the BIA, and a single BIA judge agreed with the IJ and dismissed the appeal. Petitioner filed a timely petition for review with this court on June 4, 2015.

On October 6, 2015, the Government filed a motion to remand based on the Supreme Court's June 1, 2015 decision in Mellouli v. Lynch, 135 S. Ct. 1980 (2015) (construing the phrase "relating to" in another INA provision). We denied the motion. See Order Den. Mot. to Remand, Santos Alvarez v. Lynch, No. 15-1599 (4th Cir. Oct. 27, 2015), ECF No. 22. On December 18, 2015, Petitioner filed an unopposed motion for stay of removal, which this court granted. See Order Granting Stay of Removal,

States if the alien . . . has not been convicted of any aggravated felony." 8 U.S.C. § 1229b(a)(3).

[3] Citations to the "A.R." refer to the Administrative Record filed by the parties in this matter.

4

<u>Santos Alvarez v. Lynch</u>, No. 15-1599 (4th Cir. Dec. 29, 2015), ECF No. 32.

## II.

We possess jurisdiction over the legal question of whether a crime qualifies as an "aggravated felony." <u>See</u> 8 U.S.C. § 1252(a)(2)(D); <u>Espinal-Andrades v. Holder</u>, 777 F.3d 163, 166 (4th Cir. 2015). "Although we generally defer to the BIA's interpretations of the INA, where, as here, the BIA construes statutes and state law over which it has no particular expertise, its interpretations are not entitled to deference." <u>Omargharib v. Holder</u>, 775 F.3d 192, 196 (4th Cir. 2014) (alterations and internal quotation marks omitted). We thus review the pure legal issue in this case de novo. <u>See</u> <u>Espinal-Andrades</u>, 777 F.3d at 166; <u>see also</u> <u>Vizcarra-Ayala v. Mukasey</u>, 514 F.3d 870, 873 (9th Cir. 2008) (reviewing de novo the issue of whether California forgery is an aggravated felony).

## III.

In this case, we are asked to decide whether a Virginia conviction for forgery of a public record is an aggravated felony under the INA, which is defined as "an offense relating to . . . forgery . . . for which the term of imprisonment is at least one year." 8 U.S.C. § 1101(a)(43)(R). If it is not, then Petitioner may be eligible for cancellation

5

of removal.[4]  Petitioner argues that Virginia forgery is so broad that it does not even "relat[e] to" federal forgery; therefore, it is not an aggravated felony.

A.

In determining whether Virginia's statute is an aggravated felony, we employ the categorical approach. See Mellouli v. Lynch, 135 S. Ct. 1980, 1986 (2015); Omargharib v. Holder, 775 F.3d 192, 196 (4th Cir. 2014). Under the categorical approach, "we look not to the facts of the particular prior case, but instead to whether the state statute defining the crime of conviction categorically fits within the generic federal definition of a corresponding aggravated felony." United States v. Lopez-Collazo, --- F.3d ---, 2016 WL 3080431, at *7 (4th Cir. June 1, 2016) (quoting Moncrieffe v. Holder, 133 S. Ct. 1678, 1684 (2013)). The federal definition "must be viewed in the abstract, to see whether the state statute shares the nature of the federal offense that serves as a point of comparison." Hernandez-Zavala v. Lynch, 806 F.3d 259, 264 (4th Cir. 2015).

A generic federal offense and a state offense "categorical[ly] match" "only if a conviction of the state

---

[4] Petitioner does not challenge the BIA's conclusion that he is eligible to be removed from the United States.

6

offense necessarily involved facts equating to the generic federal offense." Amos v. Lynch, 790 F.3d 512, 518 (4th Cir. 2015) (internal quotation marks omitted). This issue is not settled simply because Virginia categorizes the statute at issue as "forgery." See Taylor v. United States, 495 U.S. 575, 590 (1990) (in applying categorical approach, cautioning against "depend[ing] on the definition adopted by the State of conviction").

We note that subsection (R) of § 1101(a)(43) is one of the many aggravated felonies the INA defines "expansive[ly]" as merely "relating to" a generic federal crime, in contrast to others defined as "match[ing] . . . the comparable federal crime." Denis v. Attorney Gen. of U.S., 633 F.3d 201, 207 (3d Cir. 2011). Normally, then, under the more expansive definition, the fact that the offenses "do not precisely 'match' each other is not determinative." Id. In this case, however, we conclude that the offenses match; therefore, the two statutes necessarily relate to each other.

1.

### Generic Federal Forgery

We first identify the federal generic meaning of forgery, as it is used in the INA.

The INA does not define "forgery," nor has the BIA. This court's decision in United States v. Jones, however, is

7

instructive.  See 553 F.2d 351 (4th Cir. 1977).  In Jones, Michael Everston, a supervisor at Inglis, Ltd., directed an accounts payable clerk to alter vendor numbers in a computer system so that checks supposed to be paid to a vendor were instead issued to Everston's cohort, defendant Amy Jones, who then deposited the checks in her own account.  See id. at 354. This court considered whether, under 18 U.S.C. § 2314, "the alteration of accounts payable documents fed into a computer which resulted in the issuance of checks payable to an improper payee" constituted forgery.  Id.[5]

In its analysis, this court cited with approval the Sixth Circuit's common law definition of forgery: "the false making or materially altering, with intent to defraud, of any writing, which, if genuine, might apparently be of legal efficacy or the foundation of a legal liability," Jones, 553 F.2d at 355 (quoting Carr v. United States, 278 F.2d 702, 703 (6th Cir. 1960)), which matches "other circuits' analyses of the generic offense," Vizcarra-Ayala v. Mukasey, 514 F.3d 870, 874 (9th Cir. 2008).  See, e.g., Vizcarra-Ayala, 514 F.3d at 874; United States v. McGovern, 661 F.2d 27, 29 (3d Cir. 1981)

---

[5]  Section 2314 prohibits transportation of fraudulent securities, but excludes "any . . . forged . . . representation of an obligation or other security of the United States."  18 U.S.C. § 2314.  Jones argued the checks issued were forgeries and therefore excluded from the scope of § 2314.

("Common law forgery has three elements: (a) The false making or material alteration (b) with intent to defraud (c) of a writing which, if genuine, might be of legal efficacy."); see also Model Penal Code § 224.1(1)(b) (ALI 2015) ("A person is guilty of forgery if, with purpose to defraud . . . the actor . . . makes, completes, executes, authenticates, issues or transfers any writing so that it purports to be the act of another who did not authorize that act.").

Because the parties here dispute the breadth of the "false making" element, we focus on that aspect of the common law definition.  In Jones, we recognized that, at common law, a "false making" did not include "the creation of a writing which was genuine in execution but false as to the statements of fact contained in such writing."  Jones, 553 F.2d at 355 (footnote omitted).  In other words, with regard to a "false making," the common law term "forged" "relate[d] to genuineness of execution and not falsity of content."  Id. (quoting Marteney v. United States, 216 F.2d 760, 763 (10th Cir. 1954)).

Following this logic, we held that the checks Jones deposited into her account were not forgeries because they were "genuine instrument[s] containing a false statement of fact as to the true creditor."  Jones, 553 F.2d at 355 (emphasis omitted).  Other decisions and treatises reflect the same distinction:  forged documents or instruments must be invalid or

9

falsely executed; mere falsities present in or on the document or instrument will not suffice. See, e.g., Moskal v. United States, 498 U.S. 103, 109 (1990) (suggesting that the term "forged" in 18 U.S.C. § 2314 is not broad enough to encompass a "security that is genuine or valid" (internal quotation marks omitted)); Gilbert v. United States, 370 U.S. 650, 658 (1962) (explaining, "Where the falsity lies in the representation of facts, not in the genuineness of execution, it is not forgery" (internal quotation marks omitted)); 37 C.J.S. Forgery § 8 ("Forgery cannot be committed by the making of a genuine instrument, although the statements made therein are untrue."); 3 Wayne LaFave, Subst. Crim. L. § 19.7(j)(5) (2d ed.) ("Though a forgery, like false pretenses, requires a lie, it must be a lie about the document itself: the lie must relate to the genuineness of the document." (footnotes omitted)).

Therefore, one commits generic federal forgery only where a document is invalid or falsely executed. If the document is genuinely executed but merely contains false information, a conviction for federal forgery cannot lie.

2.

Virginia Public Records Forgery

We now turn to the Virginia statute, which provides:

> If any person forge a public record, or
> certificate, return, or attestation, of any
> public officer or public employee, in

10

> relation to any matter wherein such
> certificate, return, or attestation may be
> received as legal proof, or utter, or
> attempt to employ as true, such forged
> record, certificate, return, or attestation,
> knowing the same to be forged, he shall be
> guilty of a Class 4 felony.

Va. Code Ann. § 18.2-168 (emphasis supplied). The statute does not define "forge," but Virginia courts have defined forgery using the same definition set forth in Jones: "the false making or materially altering with intent to defraud, of any writing which, if genuine, might apparently be of legal efficacy, or the foundation of legal liability." Henry v. Commonwealth, 753 S.E.2d 868, 871-72 (Va. Ct. App. 2014) (internal quotation marks omitted); see also Brown v. Commonwealth, 692 S.E.2d 271, 276 (Va. Ct. App. 2010).[6]

And, as under federal law, "[w]here the 'falsity lies in the representation of facts, not in the genuineness of

---

[6] The statute under which Petitioner was convicted includes two offenses: forging a public document and uttering said document. Under Virginia law and federal common law, these are separate and distinct offenses. See Goodwin v. Commonwealth, 767 S.E.2d 741, 744 (Va. Ct. App. 2015) ("Code § 18.2-168 . . . prohibits two distinct offenses: forging a public record and uttering, or attempting to employ as true, the forged record."); 37 C.J.S. Forgery § 1 ("At common law, and under some statutes, forgery and the uttering or passing of forged instruments are distinct and separate offenses, in which case neither is included within the other." (footnotes omitted)). Because Petitioner himself submits that he "was convicted of forging a public record" under section 18.2-168, we need only concern ourselves with the forgery aspect of the statute. Pet'r's Br. 2.

11

execution, it is not forgery.'" Henry, 753 S.E.2d at 871 (quoting Gilbert, 370 U.S. at 658) (alteration in original). Indeed, to prove forgery of a public record in Virginia, the Commonwealth must demonstrate that the defendant's conduct "altered the genuineness and authenticity of th[e] [allegedly forged] document[], making [it] not in fact what [it] purport[s] to be." Id. at 872 (emphasis in original).

3.

### Categorical Approach

We now determine whether the Virginia statute "categorically fits within the generic federal definition" of forgery, Hernandez-Zavala, 806 F.3d at 264 (internal quotation marks omitted), or whether it "'sweeps more broadly' and criminalizes more conduct than the generic federal crime," Mena v. Lynch, 820 F.3d 114, 117 (4th Cir. 2016). In so doing, we assess whether there is "a realistic probability, not a theoretical possibility, that [Virginia] would apply its statute to conduct that falls outside the generic definition of a crime." Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193 (2007).

Petitioner believes Virginia forgery sweeps more broadly than federal forgery because a Virginia forgery conviction "can be sustained where the document in question is genuine but merely contains some false information, which is not

12

a true 'false making' under Fourth Circuit precedent." Pet'r's Br. 6.

The Government inexplicably ignored these arguments in its response brief, preferring instead to reiterate previously-rejected arguments in favor of remand. Although such an outright failure to join in the adversarial process would ordinarily result in waiver, see Citizens for Appropriate Rural Roads v. Foxx, 815 F.3d 1068, 1078 (7th Cir. 2016) ("Failure to respond to an argument results in waiver." (quoting Bonte v. U.S. Bank, N.A., 624 F.3d 461, 466 (7th Cir. 2010))), two factors militate against that result in this case. First, because resolution of this case ultimately turns on a question of statutory interpretation, we are constrained to consider whether Virginia public record forgery and federal generic forgery are a categorical match. Second, the Government finally got around to addressing the merits in a letter purportedly filed pursuant to Federal Rule of Appellate Procedure 28(j), to which we granted Petitioner leave to respond.[7]

_____

[7] Federal Rule of Appellate Procedure 28(j) provides, "If pertinent and significant authorities come to a party's attention after the party's brief has been filed . . . a party may promptly advise the circuit clerk by letter, with a copy to all other parties, setting forth the citations." Fed. R. App. Proc. 28(j) (emphasis supplied). We have made crystal clear "[w]e do not countenance a litigant's use of Rule 28(j) as a means to advance new arguments couched as supplemental authorities." United States v. Ashford, 718 F.3d 377, 381 (4th (Continued)

13

a.

Petitioner relies on a single Virginia Court of Appeals decision in support of his argument that, with regard to the "false making" aspect of forgery, Virginia forgery sweeps more broadly than the federal generic definition: Rodriquez v. Commonwealth, 653 S.E.2d 296, 298 (Va. Ct. App. 2007). In Rodriquez, police stopped the defendant, Ivan Rodriquez, because his registration plate had expired, and subsequently learned he did not have a driver's license. See id. Upon being questioned by the officer, Rodriquez verbally provided his brother's identifying information rather than his own, and the officer used that false information to prepare two traffic summonses in the name of Osvaldo Rodriquez. See id. The officer "handed the summonses to [Ivan] Rodriquez, and Rodriquez signed them, using his own name [although] the signature . . . was illegible." Id. Rodriquez was convicted of violating a prior but materially indistinguishable version of Virginia Code Ann. § 18.2-168. On appeal, he argued he did not "falsely make" the writing because the officer prepared and wrote the summonses. Id.

---

Cir. 2013); see also United States v. Washington, 743 F.3d 938, 941 n.1 (4th Cir. 2014). Here, the Government was fortunate, but circumstances may not be as favorable the next time the Government "creates the risk of an improvident or ill-advised opinion being issued on an unbriefed issue." United States v. Leeson, 453 F.3d 631, 638 n.4 (4th Cir. 2006).

14

The Virginia Court of Appeals disagreed, holding Rodriquez's conduct was sufficient to constitute a "false making" under Virginia law, because "he provided the information to [the officer] as he created the documents and, in doing so, Rodriquez engaged in the 'false making' of the two public documents." Rodriquez, 653 S.E.2d at 298. Crucially, the court found relevant the fact that Rodriquez "sign[ed] [his] own name with the intent that the writing be received as written by another person . . . or sign[ed] in such a way as to make the writing purport to be that of another," which are both "acts of forgery." Id. at 299 (quoting United States v. Price, 655 F.2d 958, 960 (9th Cir. 1981)). The court relied on generic common law forgery principles in explaining, "a person may be guilty of making a false instrument, although he or she signs and executes it in his or her own name, if it is false in any material part and calculated to induce another to give credit to it as genuine and authentic when the instrument is not in fact what it purports to be." Id. (quoting 36 Am. Jur. 2d Forgery § 10 (2001)).

Relying on Rodriquez, the IJ determined "creating a writing that is 'genuine in execution but false as to the statements of fact contained' in it is punishable by the Virginia statute, but falls outside the scope of the generic, common law definition of 'forgery.'" A.R. 93 (quoting Jones,

15

553 F.2d at 355). In its ruling, the IJ relied on the premise that Rodriquez involved a document that was "genuine in execution." But this premise is false. The IJ failed to recognize that Rodriquez himself executed the summonses with a misleading signature that did not match the name of the person named in those documents. Indeed, the Rodriquez court itself noted that the summonses as executed were "entirely fraudulent," "not authentic," and "lies." Rodriquez, 653 S.E.2d at 299 n.2. In other words, Rodriquez's conduct resulted in fraudulently executed documents, not merely inaccurate ones.

Later Virginia decisions make clear that Rodriquez did not broaden Virginia bribery beyond the scope of the federal definition of the offense. For example, in Henry v. Commonwealth, the Virginia Court of Appeals reversed the forgery conviction of William Henry, who provided false statements to a court clerk about his financial status in order to obtain indigent legal services. See 753 S.E.2d at 870. Once the clerk recorded this false information on a form application, Henry signed and dated the form. See id.

As the court explained, the form was not forged because the Commonwealth did not prove that Henry's conduct "altered the genuineness and authenticity of those documents." Henry, 753 S.E.2d at 872. The court distinguished Rodriquez, explaining, "in Rodriquez, this Court held that the summonses

16

were forged because the false identifying information that Rodriquez provided in their making transformed them into something other than what they purported to be -- the documents purported to be summonses for Rodriquez but were forged to be summonses for Rodriquez's brother." Id. at 872-73. In contrast, the form containing Henry's financial information was what it purported to be -- Henry's application for indigent legal services; it "merely contained a false statement of fact." Id. at 873 (alterations and internal quotation marks omitted).

Similarly, in Brown v. Commonwealth, the Virginia Court of Appeals reversed Kaipha Brown's conviction for uttering a forged instrument. See 692 S.E.2d at 272. Brown, an erstwhile United Airlines employee, engaged in a scheme whereby he exploited a "loophole" in United's reservation system. Id. at 273. He would make a reservation on an overbooked flight without payment, volunteer to be "bumped" from the flight in exchange for a voucher, leave the airport with the voucher, and exchange the voucher for an airline ticket. Id.

The Virginia court concluded the vouchers were not forged instruments because "the Commonwealth failed to establish that the vouchers presented by Brown were either falsely made or materially altered in any way." Brown, 692 S.E.2d at 276. Rather, "nothing in the record suggests that the vouchers were anything other than what they purported to be." Id. The court

17

also distinguished Rodriquez, explaining that because of Rodriquez's conduct, the documents at issue in that case "purported to be summonses issued to the defendant's brother for traffic infractions. In fact, the summonses were intended for the defendant." Id.

In sum, the Virginia courts have drawn a distinction between fraud that results in an invalid document that is not actually what it purports to be (forgery), and a genuine document that contains false information or is used in a fraudulent manner (not forgery).

b.

In light of this background, Petitioner has given us no reason to conclude that Virginia "would apply its statute to conduct that falls outside the generic definition" of forgery. Duenas-Alvarez, 549 U.S. at 193. Contrary to Petitioner's argument, as explained by Rodriquez, Henry, and Brown, Virginia does not treat genuine documents containing false statements as forged documents. Thus, the way in which the Virginia courts have defined "forgery" "fits within the 'generic' federal definition" of forgery, and "the state statute shares the nature of the federal offense." Hernandez-Zavala, 806 F.3d at 264.

18

Virginia forgery and federal generic forgery, therefore, "categorically match." Id.[8]

## B.

### Conclusion

Virginia forgery as set forth in Virginia Code Ann. §18.2-168 is categorically "forgery" under the INA; therefore, Virginia forgery necessarily relates to forgery under the aggravated felony provision, as the IJ and BIA determined. Because of this, we conclude that Virginia public record forgery is an aggravated felony, and the Government's renewed request to remand in light of Mellouli is denied as moot.

## IV.

For the foregoing reasons, the petition for review is denied, and the Government's renewed request to remand is denied as moot.

PETITION FOR REVIEW DENIED

---

[8] Petitioner raises two other arguments regarding the breadth of Virginia forgery that were presented to the IJ and BIA but not discussed in those decisions: Virginia forgery does not require prejudice to another's rights, but federal forgery does, see Pet'r's Br. 18; and Virginia forgery does not require a defendant to act intentionally, but only knowingly, see id. We find both of these contentions to be without merit.

19